United States District Court
Southern District of Texas
FILED

MAR 04 2025

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| VS. § | CASE NO. 7:25-MJ-0369-1 |
| § | |
| OMAR ALEJANDRO TORRES, § | |
| § | |
| Defendant. § | |

## MEMORANDUM AND ORDER

Defendant OMAR ALEJANDRO TORRES has been charged by criminal complaint with assaulting, resisting, opposing, impeding, intimidating, or interfering with a federal law enforcement officer while engaged in, or on account of the performance of, their official duties in violation of 18 U.S.C. § 111. (Dkt. No. 1). On February 28, 2025, the Magistrate Judge presided over a preliminary examination hearing pursuant to 18 U.S.C. § 3060 and Rule 5.1 of the Federal Rules of Criminal Procedure. The Magistrate Judge now enters a finding that there was no probable cause to believe an offense was committed.

### I. EVIDENTIARY BACKGROUND

The Government's only witness, Cordero Contreras, a Special Agent with the Homeland Security Investigations ("HSI"), testified as to the encounter giving rise to the charged offense. Defendant's appointed counsel cross-examined Agent Contreras but did not present any witnesses or other evidence. Agent Contreras's testimony, which was consistent with the written factual allegations attached to the complaint, went as follows.

On February 25, 2025, Defendant approached the Hidalgo, Texas Port of Entry on foot, seeking entry into the United States from Mexico. Defendant was traveling with two other male

individuals. At the midpoint portion of the point of entry pedestrian bridge, an officer with the Customs and Border Protection, K. Vasquez, encountered Defendant and requested identification documentation for entry into the United States. Defendant refused repeatedly to provide identification and proceeded to walk towards the United States. After ignoring multiple commands to stop, Defendant halted when Officer Vasquez physically positioned herself in his path. Upon being stopped and again asked to provide identification, Defendant continued to refuse compliance, exhibiting "aggressive" and "uncooperative" behavior towards Officer Vasquez. Defendant eventually furnished identification on his phone. Officer Vasquez confirmed Defendant's eligibility for lawful entry into the United States and returned the documentation to Defendant. Defendant then proceeded to walk away from her. As Defendant was walking away, Officer Vasquez heard Defendant, while laughing, say in Spanish, "*En Reynosa, te mato*," which translate to "In Reynosa, I will kill you." A second customs officer, who was approaching Officer Vasquez and Defendant, heard Defendant's utterance. Apparently, the second officer was close enough to Defendant that they could sufficiently hear Defendant's utterance but far enough away from Officer Vasquez that they would have needed radios to "communicate freely."

According to Agent Contreras, Officer Vasquez perceived Defendant's utterance as a threat against her and was "taken [a]back and [feeling] uneasy to a point [where] she needed a break[—]a moment for herself."

At a later point in time, Defendant was interviewed by HSI officials as to his interaction with Officer Vasquez. Upon making a written Miranda waiver, Defendant stated that, during his interaction with Officer Vasquez, he had uttered in Spanish, "*Por eso hay muertos en Reynosa*," which translates to "That is why there are deaths in Reynosa." Defendant conceded that his utterance could have caused Officer Vasquez to be concerned for her safety. Defendant also stated

that he was seeking entry into the United States on February 25th for his daily commute[1] and was "frustrated and in a rush" at the time of his interaction with Officer Vasquez.

## II. LEGAL STANDARD

The purpose of a preliminary hearing is to ascertain "whether or not there is probable cause to warrant detention of the accused pending a grand jury hearing." *United States v. Coley*, 441 F.2d 1299, 1301 (5th Cir. 1971). A defendant must be ordered to appear for further proceedings based on findings that there is "probable cause to believe an offense has been committed and the defendant committed it . . . ." Fed. R. Crim. P. 5.1(e). Absent these findings, the complaint must be dismissed and the defendant discharged. Fed. R. Crim. P. 5.1(f). A discharge for lack of probable cause, however, does not preclude the government from later prosecuting the defendant for the same offense. *Id.*

Probable cause means "the existence of reasonable grounds to believe the accused committed the charged offense." *In re Extradition of Vargas*, 978 F. Supp. 2d 734, 746 (S.D. Tex. 2013). The term refers to "evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *In re Extradition of Cervantes Valles*, 268 F. Supp. 2d 758, 772 (S.D. Tex. 2003). In other words, "[p]robable cause is measured against an objective standard." *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004) (citing *Beck v. Ohio*, 379 U.S. 89, 96 (1964)).

"For purposes of Rule 5.1, the probable cause determination is made *de novo* relative to the arrest, based on the facts and circumstances as they exist at the time of the preliminary hearing." *United States v. Perez*, 17 F. Supp. 3d 586, 593 (S.D. Tex. 2014). The examining judge must engage in "a totality of the circumstances analysis and make a practical, common sense decision

---

[1] Customs database inquiries showed that Defendant had crossed the border frequently, sometimes multiple times on the same day.

whether, given all the circumstances, there is a fair probability that the defendant committed the crime." *Vargas*, 978 F. Supp. 2d at 746-47. "Proof of probable cause requires less evidence than . . . proof beyond a reasonable doubt—but more than 'bare suspicion.'" *United States v. Banuelos-Romero*, 597 F.3d 763, 768 (5th Cir. 2010) (quoting *United States v. Rayborn*, 872 F.2d 589, 593 (5th Cir. 1989)). At the same time, "[t]he probable cause requirement does 'not demand any showing that [the belief that an offense was committed] is correct or more likely true than false.'" *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir. 1985) (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)); *see also United States v. Garcia*, 179 F.3d 265, 269 (5th Cir. 1999) ("[T]he requisite 'fair probability' is something more than a bare suspicion, but need not reach the fifty percent mark.").

The prosecution has the burden of offering enough evidence of probable cause, and all reasonable inferences are drawn in its favor. *Perez*, 17 F. Supp. 3d at 593-94. "[I]t is 'well established . . . that a showing of probable cause cannot be negated simply by demonstrating that an inference of innocence might also have been drawn from the facts alleged.'" *United States v. Coiscou*, 793 F. Supp. 2d 680, 685 (S.D.N.Y. 2011) (quoting *Walczyk v. Rio*, 496 F.3d 139, 157 (2d Cir. 2007)). Nor will an arrestee's denials and hypothetical explanations—even if plausible enough to raise reasonable doubts about guilt—operate of themselves to negate probable cause. *See United States v. Delossantos*, 536 F.3d 155, 159-61 (2d Cir. 2008).

The Federal Rules of Evidence do not apply at a preliminary hearing. Fed. R. Evid. 1101(d)(3). A probable cause finding, therefore, may be based entirely on hearsay. Fed. R. Crim. P. 5.1(e) (Advisory Committee Note to 2002 Amendment). Moreover, at the preliminary hearing, the defendant may cross-examine witnesses and introduce evidence but may not object on the ground that the evidence was unlawfully acquired. Fed. R. Crim. P. 5.1(e).

## III. ANALYSIS

For reference, § 111(a) provides in relevant part that whoever—

> forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any [officer or employee of the United States] while engaged in or on account of the performance of official duties[ ]
>
> * * *
>
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both[.]

18 U.S.C. § 111(a)(1). For purposes of § 111(a), "the forcible performance of any of the six proscribed actions . . . without the intent to cause physical contact or to commit a serious felony" constitutes "simple assault[.]" *See United States v. Williams*, 602 F.3d 313, 317 (5th Cir. 2010) (citing *United States v. Gagnon*, 553 F.3d 1021, 1027 (6th Cir. 2009)) (emphasis omitted). Under Fifth Circuit law, simple assault under § 111(a) is a misdemeanor offense defined as "an attempted battery or the placing of another in reasonable apprehension of a battery." *United States v. Hazlewood*, 526 F.3d 862, 865-66 (5th Cir. 2008). Where force is proven through a threat, the threat must be of immediate harm and coupled with a present ability to inflict harm. *Sophin v. United States*, 153 F. Supp. 3d 956, 966 (W.D. Tex. 2015) (citing *United States v. Waweru*, 628 F. App'x 608, 611 (10th Cir. 2015)).

The question of probable cause turns here on whether Defendant's utterance was a threat of immediate harm, coupled with a contemporaneous ability to inflict that harm. *See id.* During the preliminary hearing, defense counsel argued that Defendant's utterance, at most, constituted a conditional threat and failed to engender immediate harm. The Government, on the other hand, argued that the threat of immediate harm was supported by the adverse effect of Defendant's words on Officer Vasquez. The Government also argued that the presence of Defendant's two male companions, as well as Defendant's aggressive demeanor throughout the interaction, demonstrates

that Defendant could have effectuated the threatened harm. Following the hearing, the Government submitted the case of *United States v. Gaither*, 533 F. Supp. 2d 540 (W.D. Pa. 2008) as support for its position. (Dkt. No. 7 at 3-4). In *Gaither*, the defendant confronted a federal informant at the informant's residence and threatened that "she would f[—] him up" if he had provided incriminating information on her boyfriend. *Id.* at 542. The *Gaither* court determined that, while the threat was "obviously directed toward an indefinite future[,]" it nonetheless constituted a threat of immediate harm for purposes of §111(a) insofar as "[the informant] feared that if he told [the defendant] the truth she would attack him immediately[,] . . . [and] such fear was reasonable under the circumstances." *Id.* at 547-48.

While a threat directed toward an indefinite or conditional future may engender apprehension of immediate harm, a review of the case law invariably demonstrates that circumstances beyond mere verbal expression—such as the declarant's body language or confrontational posture—are necessary to establish that the threatened harm could be effectuated immediately. *See, e.g., id.*; *United States v. Avila*, 76 F. App'x 575, 576 (5th Cir. 2003) (per curiam) (affirming defendant's simple assault conviction based on testimony that he "swung his right arm towards the security officer"); *United States v. Schrader*, 10 F.3d 1345, 1348 (8th Cir. 1993) (holding that defendant's reaching into his jacket as if to draw a weapon while making threats sufficiently constituted a violation of § 111); *United States v. Fernandez*, 837 F.2d 1031, 1033 (11th Cir. 1988) (defendant forcibly assaulted federal officer when he pursued a prosecutor in his brother's ongoing criminal case, positioned his face "inches away" from the prosecutor's face, and repeatedly told the prosecutor to "watch his back").

The circumstances here do not support a reasonable apprehension of immediate bodily harm. Defendant made the utterance at issue while *walking away* from Officer Vasquez and

laughing, after his eligibility for lawful entry into the United States had been confirmed. Moreover, although Defendant was accompanied by two male individuals, the record is devoid of any indication that these companions engaged in conduct that would reasonably suggest the possibility of an imminent attack.

### IV. FINDING

Based on the evidence presented at the preliminary hearing, the Magistrate Judge concludes that there is no probable cause to hold Defendant for further proceedings, as Defendant's conduct does not constitute forcible intimidation for purposes of § 111(a). Accordingly, the Magistrate Judge orders that the complaint be **DISMISSED** and Defendant be **DISCHARGED**.

IT IS SO ORDERED.

SIGNED at McAllen, Texas this 4th day of March 2025.

_____
J. SCOTT HACKER
United States Magistrate Judge